IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

2:10cv54

**FILED**

APR 22 2010

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

Dr. Roger D. Blackwell,
   Petitioner pro se
      v.
Joel Ziegler, Warden
   FCI-Morgantown

Petition for Writ of Habeas Corpus under 28 U.S.C., Section (s) 2241
Expedited Treatment Requested

   Now comes Dr. Roger D. Blackwell ("Blackwell"), as petitioner pro se in the above titled case to set forth and outline the law, facts and supporting grounds for his motion to grant a Writ of Habeas Corpus under 28 U.S.C. s2241 by this Honorable Court requiring Joel Ziegler, Warden of the Federal Correctional Institution at Morgantown, WV ("Morgantown") to make a good faith consideration of Blackwell for transfer to a Residential Re-entry Center ("RRC", formerly known as "CCC") in Columbus, Ohio for a maximum period under the law of 12 months. Petitioner requests a writ by this Honorable Court, as soon as practical after the date of his eligibility for RRC, April 8, 2010. Each day after that date delays his reentry.

   Blackwell is currently incarcerated as a Federal prisoner in Morgantown. Since January 17, 2006, he has been serving a 72 month sentence for charges related to insider trading. Blackwell has maintained his innocence continuously and continues to do so and currently has an appeal pending to the 6th Circuit Court of Appeals of his s2255 Habeas Motion which was denied by the District Court of Southern Ohio, Eastern Division on April 1, 2010. A copy of his most recent pleading ("Objection") in his s2255 motion is attached as Exhibit C. His motion for Habeas relief on the basis of Actual Innocence is also pending in the same court as his motion for s2255 relief.

   Blackwell's current motion for Habeas relief to this Court under section 2241 is not an attack upon the sentence or conviction, but rather an attack upon the execution of his sentence at his current place of incarceration, FCI-Morgantown. Therefore, his motion under 28 U.S.C. s2241 in this Honorable Court of the Northern District of West Virginia is the proper venue for petitioners to such relief. Preiser v. Rodriquez, 411, 475, 93 S.C 1827, 36 L.Ed. 2d 439 (1973). This legal precedent has also been adopted by several U.S. Circuit Court of Appeals. See Addul-Malik v. Hawk-Sawyer, 403 F.3d 72,73 (2d Cir.2005); Hernandez v. Campbell, 204 F. 3d 861, 864 (9th Circ. 2000); United States v. Jalili, 925 F. 2d889,893 (6th Cir. 1991) and Montez v. McKinna, 208 F. 3rd 862,865 (10th Cir. 2000). Based on these precedents and the fact that petitioner is incarcerated in this Honorable Court's jurisdiction, this court has jurisdiction to adjudicate petitioner's s2241 motion and grant relief to Blackwell.

   All Administrative Remedies within the BOP have been exhausted by the Petitioner, prior to this motion for Habeas relief. His requests for Administrative Remedies and BOP responses are attached as Exhibit A and are incorporated by reference as an integral part of this petition.

   His request for 12 months RRC under the Second Chance Act (SCA) began on July 29, 2009 with a Request to Staff ("cop-out") to Ms. L. Lindsay, his Case Manager, who replied on August 3, 2009 that his request would be reviewed during his August program review. At that meeting, Blackwell was told "no one receives more than six months", and "no one gets 12 months," with the reason repeatedly stated as "it ain't gonna' happen." When Blackwell requested his Counselor join the meeting, Blackwell was told in the presence of the Counselor that his request for 12 months would be referred to the Unit Manager, Ms. F. Waters. Blackwell submitted a cop-out to Ms. Waters, the Unit Manager, which was unanswered. After repeated oral requests for a written answer to his cop-out, Ms. Waters told Blackwell she would speak to the Case Manager before a decision was made concerning the request for 12 months RRC. When that did not occur, Blackwell filed a request for Administrative Remedy ("8.5") and when no answer to the question of HWH was given in the Reply to the 8.5, a request for Administrative Remedy to the Warden ("NINE") was submitted. In the NINE, the Warden stated Blackwell would be recommended for 5-6 months RRC, but failed to provide information why Blackwell would not be considered for 12 months as required by the SCA. Blackwell then filed the appropriate request to Regional ("TEN") to which he received a reply denying 12 months RRC, but failing to respond to the issues raised in his 8.5 or NINE. He then filed the appropriate request to national BOP legal counsel ("ELEVEN"), which was received and to which the BOP requested an

extension to answer. The BOP promised to reply, including an extension, by April 2, 2010 (copy attached in Exhibit A). To date, NO ANSWER HAS BEEN GIVEN BY THE BOP Legal Counsel, which BOP rules construe to be a denial. ("If the inmate does not receive a response within the time alloted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 CFRs542.18) Blackwell is left, therefore, with no recourse except to ask this Honorable Court to enforce the provisions of the SCA.

Petitioner has no additional sentences to serve and there are no pending detainers. There are no unpaid fines and because there were no victims in this case, there was no restitution.

## LAW AND FACTS

In Section 251 of the SCA, Congress doubled the BOP's required consideration of prerelease custody in the community from a maximum of six months to twelve months. See Second Chance Act, Pub.L 110-199, s251, 122 Stat.657 (Apr. 9, 2008); 18 U.S.C. s3624(c)(2008). Congress also instructed the BOP to promulgate regulations within 90 days to ensure
1) consideration of the five factors listed in 18 U.S.C s3621(b),
2) individualized rather than categorical assessment, and
3) placement in the community for a "sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. s3624(c)(6)(2008)

Implementation of the SCA's plain language should normally lead to transfer in cases such as Blackwell to a halfway house (HWH) starting at twelve months from the projected release date (April 8, 2011 in Blackwell's case), with up to the final six months in home detention, unless less time in the community was justified by individual factors that override the greater opportunities for work in the community, for family reunification, and for other community-based programming to ease reentry from prison to home.

In response to Blackwell's requests and the exhaustion of his Administrative Remedies, the BOP repeatedly violated the statute's plain intent by clinging to the former rules that effectively limited community corrections to six months, absent undefined and extraordinary and compelling circumstances. See "Pre-Release Residential Re-entry Placements Following the Second Chance Act of 2007", Memorandum From Joyce Conley and Kathleen Kenney to Chief Executive Officers (of the BOP), dated April 14, 2008.(Exhibit B) While addressing the United States Sentencing Commission, the Director of the BOP claimed that research supported the six-month limitation, but discovery obtained in litigation initiated by Federal Public Defender Stephen R. Sady established that no such research exists. With no empirical support of its position, the BOP has failed to adopt the common sense position of Congress that, in general, more time in community transition programs increases the fiscal and individual benefits of employment, family reunification and less stringent custody.

The BOP's six-month presumption violates the relevant statutes. Their plain text as well as their context reveals that the current practice of the BOP, as applied to Blackwell's individual case, retains the pre-SCA six-month standard. As a U.S. District Court in New Jersey held, "obviously, an underlying premise of these amendments is that the more time an inmate spends in a CCC before he or she is released from BOP custody, the more likely that his or her community reintegration will be successful." (Strong v. Schultz, 590 F. Supp. 2d 556, 562, D.N.J., 2009.)

Despite a clear directive from Congress and the opportunity to increase substantially the use of community corrections under the SCA, the BOP has maintained on a de facto basis its pre-SCA policies and practices in its decision concerning Blackwell. On the amendment to s3624, Congress has spoken, but the BOP has not listened, leaving federal prisoners such as Blackwell in the same position as if the SCA had never been enacted. In this case, Blackwell requests this Honorable Court recognize that the facts and law indicate one of the following:
   A. The BOP is promulgating policies as applied to Blackwell, in violation of the Second Chance Act, or
   B. The BOP is permitting its operating personnel to apply policies to Blackwell, in violation of the Second Chance Act

In either situation, Blackwell is affected by the failure of the BOP to adhere to the clear intent of Congress and the failure is not harmless. The date of April 8, 2010 was the day Blackwell was eligible for release to HWH under the SCA and every day of delay beyond that date decreases the time available for him to seek employment as a teacher, decreases his chance of successful reentry and is a violation of his rights under the SCA. Because the BOP has violated its own promise to provide a timely response to his request for the full 12 months RRC under the SCA, Blackwell requests this Honorable Court issue a writ on an expedited basis to minimize the remaining harm to him caused by the BOP's actions and inactions.

(This document was prepared on prison equipment that does not allow double spacing, margin adjustment, italics, underlining, footnotes or pagination. Petitioner apologizes to the Court and respectfully requests its understanding. As a non-lawyer, incarcerated, pro se litigant, he also requests liberal interpretation of the form and content of this motion.)

## GROUNDS FOR THIS WRIT OF HABEAS CORPUS

In its responses to Blackwell's requests for Administrative Remedy, the BOP and its personnel state that "five factors" were considered. Yet, none of the five factors cited in any of the BOP's responses indicate anything but support of Blackwell's request for 12 months RRC. The responses contain not one scintilla of information about how the five factors were applied to Blackwell's specific case or support anything less than the 12 months allowed by the SCA. Concerning the other two variables in the SCA (individualized rather than categorical assessment, and placement in the community for a "sufficient duration to provide the greatest likelihood of successful reintegration into the community"), the responses of the BOP are totally silent. The BOP's silence is deafening, providing the following grounds for an issuance by this Court of a writ requiring the BOP to comply in good faith with the SCA and a de novo review by this Court granting 12 months RRC for Blackwell.

GROUND ONE -- THE BOP FAILED TO CONSIDER THE INDIVIDUAL FACTORS AFFECTING BLACKWELL'S REQUEST AND NEED FOR 12 MONTHS RRC, AS REQUIRED BY THE SECOND CHANCE ACT.

The BOP's repeated assertions that "An RRC placement recommendation of 150-180 days was deemed appropriate for your transitional needs" contradict the INDIVIDUAL FACTS in Blackwell's situation. The 8.5, NINE, and TEN responses demonstrate no consideration of the INDIVIDUAL facts involved in Blackwell's RRC placement.

If released in October or November, which would be the result of a recommendation of 150-180 days, Blackwell would be delayed by a year from gaining employment as a teacher. Teaching contracts are nearly always negotiated in the spring or summer for employment beginning in August or September. Because a delay would also cause his re-entry to be after age 70, a time in which many schools cease to make new hires of teachers, the RRC delay could permanently prevent his successful re-entry to society as a teacher, causing harm to Blackwell's successful reentry, and denying society the services of an experienced teacher for at least a year and potentially forever.

At Blackwell's team meeting on March 16, 2009, it was agreed and recorded in his Inmate Skills Development Plan (ISDP) that his goal was to "seek employment upon release as a teacher." An RRC recommendation of 5-6 months is in direct conflict with the goal recommended by his Team for Blackwell and a violation of the SCA recommending that each inmate be considered for up to 12 months based on the INDIVIDUAL facts of the case. The responses of the BOP, in Exhibit A, can only be characterized as "boiler plate", template-generated, non-individualized and nearly identical, as discovery will show, to those given to every inmate seeking rights provided in the SCA.

The implicit and sometimes explicit assumption in all of the BOP's responses is that 5-6 months RRC is "adequate" for Blackwell to find employment as a teacher, ignoring the reality of when teaching jobs begin in August or September. The BOP's assertion that 5-6 months will "provide the greatest likelihood of successful reintegration to the community" compared to 12 months is not logical, and lacks both credibility and veracity.

In each reply to the Administrative Remedies (8.5.,NINE, TEN, copies attached), the BOP IGNORED THE INDIVIDUAL FACTS relating to Blackwell. The responses do not even acknowledge the INDIVIDUAL FACTS pertaining to Blackwell's employment as a teacher, except the response to Blackwell's NINE when the (acting) Warden admits that Blackwell is qualified as a teacher. The Warden re-stated Blackwell's professional and educational attributes qualifying him as a teacher, but FAILS to apply these facts to the INDIVIDUAL need of Blackwell for up to 12 months RRC. Instead of complying with the SCA, the BOP applied its pre-SCA standard of a maximum of six months.

Petitioner asks this Honorable Court to require the BOP's personnel to consider the INDIVIDUAL facts concerning Blackwell as they apply to his reentry employment as a teacher and grant him 12 months RRC, beginning as soon as practicable after April 8, 2010.

GROUND TWO-- THE BOP STAFF ABUSED ITS DISCRETION AND ACTED WITH A LACK OF GOOD FAITH BY LIMITING BLACKWELL'S MAXIMUM RRC PLACEMENT TO 6 MONTHS.

The SCA is clear in its Congressional intent that each inmate should be considered for 12 months RRC placement. In the Conley-Kenney Memorandum (Id.) on April 13, 2008, BOP Legal Counsel stated, "Specifically, inmates must now be reviewed for pre-release RRC placement 17-19 months before their projected release dates." Blackwell began this review process and his Administrative Remedies within this period. The Conley-Kenney Memorandum further states, "This means Bureau staff MUST approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement." (emphasis in original).

Ms. L. Lindsay, Case Manager, repeatedly told Blackwell (and other inmates with similar requests), "No one gets more than six months" and "no one gets 12 months. It ain't gonna' happen." Additionally, at a "town meeting" held in the Auditorium of the

Educational/Recreational Building of FCI-Morgantown in January, 2010, Ms. F. Waters, Unit Manager, announced to the more than 200 inmates present:

"The Second Chance Act don't apply to anyone here.(sic) No one is going to get more than six months halfway house. You can submit all the paper you want, and I don't care how much education or master's degrees you have, you are wasting your time."

She added, "You're not going to tell me how to run my unit."

These statements by BOP staff are either execution of a BOP policy that violates the intent of the SCA, or in the alternative, BOP personnel are being permitted by BOP executives to exercise individual activities harming inmates with decisions that flagrantly violate the SCA. The statements were endorsed in the Warden's response to Blackwell's NINE, in the statement by BOP counsel ( Conley-Kenney Memo, Id), "inmates pre-release RRC can usually be accomplished by a placement of six months or less" and in the "chilling effect" of the Conley-Kenney Memo requiring that a Warden "must obtain the written concurrence of the Regional Director for a recommendation of more than six months".

The reason for arbitrary and capricious decisions about individual inmates may be explained by the economic consequences for BOP personnel. The Director of the BOP, Mr. Harley Lappin, recently made the following explanation of why the SCA is being ignored by the BOP:

"Based on the mission of the agency... the Bureau of Prisons rarely uses RRCs for direct-court commitments and rarely transfers inmates to RRC for pre-release services for more than six months... While it is certainly desirable for offenders to remain with their families in the community for extended periods of time, such placements cannot be justified with the agency mission as cost efficient and necessary to address re-entry needs." (Statement before the United States Sentencing Commission regional hearing in Austin, Texas on November 20, 2009)

While admitting the need for 12 months RRC as desirable for inmates, their families and society, the Director and the Staff reporting to him are making decisions of primary benefit to themselves. Granting longer RRC placements, as authorized by Congress, requires the BOP to pay the money it receives from Congress to private contractors who operate halfway houses, instead of keeping the funds for its own employees and facilities.

Not only are inmates harmed and their civil rights violated by the BOP's process of avoiding compliance with the SCA, but so are taxpayers. The cost to house inmates in HWH facilities was $20,843.78, as of June 6, 2008, compared to federal incarceration costs of $23,431.92. (www.uscourts.gov/newsroom/prisoncost.html). Bluntly stated, the BOP is keeping the money Congress appropriated to the BOP for itself instead of helping inmates, taxpayers and society. While Congress granted discretion to the BOP concerning RRC placement, it is doubtful that Congress intended the BOP to abuse that discretion, nor act with a lack of good faith to taxpayers and the community at large. The BOP should not be allowed to choose which laws to which it will comply and which ones it will not.

Granting the full length of time required by the SCA creates an inherent conflict for personnel assigned with the responsibility for assigning inmates to RRC facilities. If prison populations were reduced (at lower costs to taxpayers) by increasing RRC time, the jobs of some prison personnel including Case Managers and Unit Managers involved in such decisions would be at risk. This is a conflict between the financial interest of BOP personnel and the community interests of inmates, their families and American taxpayers. In such instances, it is appropriate and proper for courts such as this Honorable Court to intervene in the normal discretion given to the BOP and issue a writ to protect the civil rights of inmates (and taxpayers) as Congress intended when it passed the SCA. Acting in the self-interest of the BOP indicates not only a lack of good faith by personnel in a federal agency, but abuse of the discretion given to the organization.

Blackwell respectfully requests this Honorable Court grant his requested writ based on Ground Two of this motion.

GROUND THREE- THE RECOMMENDATION OF RRC SHOULD BE INCREASED TO A MAXIMUM OF 12 MONTHS BECAUSE THE RECOMMENDATION OF 150-180 DAYS IS BASED ON PROCEDURAL ERROR.

The BOP's response dated December 1, 2009 to Blackwell's 8.5 states that his request for 12 months was based on Program Statement 7310.04. (Copy attached in Exhibit A). According to BOP Rules published in the Federal Register, the decision should have been based on 28 CFR, Part 570, subpart (b) and 18 U.S. C. 3621 and 3624. The Conley-Kenney Memorandum referenced above states that "Provisions in PS7310.04 that reflect any other possible time frame (than 12 months) MUST BE IGNORED. (Emphasis added). In making its determination, "staff must not view any of the criteria listed in PS7310.04, especially Sections 9 and 10, or any other policy as AUTOMATICALLY precluding an inmate's pre-release RRC placement." Further, "this means Bureau staff MUST approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement." (emphasis in original.) Furthermore, at the time the Case Manager decided 150-180 days RRC placement was adequate, both Ms. F. Waters, Unit Manager, and Mr. T.Yost, Blackwell's Counselor, were absent and did not participate in the consideration of Blackwell's case.

The process in which Blackwell was recommended for 150-180 days rather than 12 months RRC was flawed by procedural error and should be declared by this Court an improper application of the SCA violating the inmate's civil rights under the SCA.

REQUEST FOR RELIEF

 The ordinary practice of allowing administrative agencies such as the BOP to conduct its ordinary activities without judicial review contains an important exception, namely, when the actions of the agency are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" or "without observance of procedure required by law." Title 5 U.S.C s706(2)(A),(D). Administrative decisions are arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." See Motor Vehicle Manufacturers Association of the United States, Inc., v State Farm Mutual Auto Ins. Co. 463 U.S.29,43,103 S.Ct. 2856, 77 L. Ed 2d 443 (1983). The BOP relied on factors in Blackwell's case contrary to those intended and included in the SCA doubling RRC time from 6 months to 12 months. The BOP's conclusion that 6 months will "provide the GREATEST likelihood of reintegration into society" compared to 12 months is so implausible that it cannot be viewed as a product of agency expertise.

 The BOP's decision must be supported by "substantial evidence". "Substantial evidence is more than a scintilla -- i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion," Foot v. Charter, 67 F.3d 1553, 1560 (11th Cir., 199t), citing Walden v. Schweidker, 672 F.2d 835 (11th Cir. 1982) and Richardson v. Perales, 402 US 389, 401, 91 S. Ct. 1420, 28 L Ed 2d842 (1971). In Blackwell's case, the BOP has offered NO evidence, nor even a scintilla of a specific response to his request, supporting its incredulous assumption that 6 months provides "the GREATEST likelihood of reintegration" compared to 12 months.

 Further, where, as in Blackwell's case, the Court is required to apply a de novo review resulting from the BOP's inherent conflict of interest, no abuse of discretion is required to overturn an administrative decision that is without basis or just wrong by a preponderance of the evidence. See Nave v. Fortis Benefits Ins. Co., 1999 U.S. Dist. LEXIS 13382 (E.D. Pa); Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 f. 2D 1556, 1568 (11TH Cir. 1990), cert. denied, 498 U.S 1040; and Vega v. National Life Insurance Services, Inc., 188 F.3d 287 (5th Cir. 1999, en banc).

 Whether the Case Manager and Unit Manager in Blackwell's case were following BOP policy or were permitted to violate policy by the Warden, the effect is rooted in the pre-SCA standard of limiting RRC to 6 months, and the effect is not harmless to Petitioner. "It is this ceiling (of 6 months) that taints the BOP's decision to place (petitioner) in a RRC for only five to six months." Krueger v. Martinez, 2009 U.S. Dist. LEXIS 79203 (3rd Cir. Dist. Ct., Sept 3, 2009). The assertion that six months will provide the greatest likelihood of reentry success "is an abuse of discretion because a presumptive six-month cap finds no support in the text of the Second Chance Act." Krueger v. Martinez, Id. A categorical limitation on RRC placements, such as exists in the Blackwell case, violates the BOP's discretion in the Administrative Procedures Act (APA), and needs judicial remedy. See Fishermen's Dock Coop., Inc., v. Brown, 75 F.3d 164,167 (4th Cir. 1996). The standard of review should be de novo due to a financial conflict of interest, one which Director Lappin has publicly acknowledged and offered as a reason for not complying with the SCA. Federal statutes creating conflicts of interest in adjudication of decisions apply to any federal employee's participation, on behalf of the government, in any application in which he or she has a conflict of interest, not just those involving outside suppliers of goods and services to the government. U.S. v. Lund, 853 F. 2d 242, 1988 U.S. App. LEXIS 10100 (4th Cir. 1988). Such actions are particularly egregious when they involve the denial of the civil rights of citizens, including inmates, their families, taxpayers and the community at large. Because of the failure of the BOP to remedy this harm itself, and its inherent conflict in doing so, Petitioner, after exhausting all Administrative Remedies, is left with no recourse except his prayer to this Honorable Court to uphold the rights specified in the Second Chance Act.

 For the above reasons, Blackwell asks this Honorable Court to GRANT relief of the following nature:
1. ORDER Respondent(s) to SHOW CAUSE as to why the petitioner should not be GRANTED within 15 days, an expedited consideration,
2. GRANT Petitioner 15 days thereafter to reply or traverse under habeas rule 5(d),
3. ALLOW Petitioner to amend to cure any procedural default(s) prior to denying the petition,
4. ORDER Respondent(s)to release Petitioner to an appropriate RRC in Columbus, OH to fulfil the balance of his sentence and
5. GRANT such other relief as the Court deems fair and Just. If, in the Court's wisdom, it believes a writ of mandamous is also needed or more appropriate to ensure compliance of the BOP with the SCA, Petitioner requests the Court issue such an order.

## REQUEST FOR DISCOVERY

The preponderance of evidence from the facts and law described above, Petitioner believes, is sufficient for the Court to render the requested relief without further discovery. Because every day of delay after the date of his eligibility for transfer to RRC, April 8, 2010, reduces his likelihood for successful reintegration to the community and delays reunification with his family, the need for relief is urgent.

In the event that Respondent opposes this petition, however, or the Court requires additional information, Petitioner requests discovery of the following nature:

1. Under the provisions of BOP Program Statement P1330.16 (as specified in Section 13b), any written documents or notes in Blackwell's "RRC review" used to evaluate the individual facts in this case.
2. Access to the same documents since passage of the SCA to the current date for all inmates at FCI-Morgantown, under section 542.19, with appropriate redaction of inmate identifying information.
3. The number of inmates who have received more than six-months RRC placement at FCI-Morgantown since passage of the SCA, and similar statistics for the BOP nationwide.
4. An updated cost accounting of the costs of RRC versus BOP versus home-confinement of prisoners, including any and all internal BOP cost estimates of the budgetary impact to the BOP of SCA compliance.
5. Any correlation or other studies conducted by the BOP relating recidivism to length of RRC.
6. Permission to conduct Interrogatories and testable depositions of the following individuals:
   a. Warden J. Ziegler
   b. Unit Manager F. Waters
   c. Case Manager L. Lindsay
   d. Other BOP personnel who have information relating to this petition or Blackwell's case
   e. A representative sample of inmates in attendance at the "town meeting" conducted by Unit Manager Waters, in sufficient quantity to establish the accuracy of the statement made by Ms. Waters concerning her execution of SCA policies.

Because of the difficulty in conducting discovery and depositions by an incarcerated petitioner, Blackwell requests permission and the assistance of the Court to engage an attorney practicing within the Court's jurisdiction to assist with the process of discovery and to conduct the depositions of BOP officials and inmates requested in this petition.

Because of the increased harm to Blackwell, his family and taxpayers with every day of delay in compliance with the SCA, Petitioner requests expedited treatment of this motion to obtain the relief described above.

I hereby certify that the information and facts contained in this petition are accurate and complete to the best of my knowledge, recollection and belief, under penalty of perjury.

Respectfully submitted,

*Roger D. Blackwell*  4-19-10

Roger D. Blackwell, Ph.D.
#66376061
Federal Correctional Institution, Box 1000
Morgantown, WV 26507-1000