IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DR. ROGER D. BLACKWELL**,

        Petitioner,

v.                                                          Civil Action No. 2:10cv54
                                                               (Judge Maxwell)

**JOEL ZIEGLER, Warden,**

        Respondent.

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on April 22, 2010, by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Doc. 1). The petitioner paid the required $5.00 filing fee on April 26, 2010. (Doc. 5). In the petition, the petitioner challenges the Bureau of Prisons' ["BOP"] decision to place him in a Residential Release Center ["RRC"] for less than the maximum allowable twelve months.

On April 29, 2010, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to file an answer to the petition. (Doc. 6). The respondent filed a Response and Motion to Dismiss or for Summary Judgment on May 25, 2010. (Doc. 9). Because the petitioner is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on June 1, 2010. (Doc. 16). On July 10, 2010, 2010, the petitioner filed a response. (Doc. 19).

On June 18, 2010, the respondent filed a motion for permission to file a reply. (Doc. 21).

That motion was granted (doc. 24) and the respondent filed a reply on July 1, 2010. (Doc. 28). Without permission from the Court, the petitioner filed a surresponse on July 9, 2010. (Doc. 29). This case is before the undersigned for a report and recommendation on the respondent's motion.

## II. The Petitioner's Conviction and Sentence

The petitioner is currently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia ("FCI Morgantown"). He is serving a 72 month sentence imposed by the United States District Court for the Southern District of Ohio. (Doc. 1 at 1). The petitioner's projected release date is April 8, 2011. (Doc. 11, Ex. 1 at ¶ 8). He has been recommended for placement in a RRC for the last 5-6 months of his incarceration. *Id.* at ¶ 11.

## III. Contentions of the Parties

### A. The Petition

In his petition, the petitioner asserts that pursuant to the Second Chance Act, the BOP is required to consider inmates for prerelease custody for twelve months. Doc. 1 at 2. In addition, the petitioner asserts that Congress instructed the BOP to promulgate rules to ensure "(1) consideration of the five factors listed in 18 U.S.C. § 3621(b); (2) individualized, rather than categorical assessment; and (3) place in the community for a sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* The petitioner contends, however, that the BOP has impermissibly capped RRC placement at six months. *Id.* In support of this claim, the petitioner asserts that in memorandums and at hearings the BOP has stated its belief that six months is normally enough time for any inmate to successfully prepare to transition back into society. *Id.* The petitioner asserts that this six month presumption violates the purpose and spirit of the Second Chance. *Id.* He further asserts that such improper practices were applied to his RRC

placement assessment, thus violating his statutory and constitutional rights. *Id.*

In support of his petition, the petitioner asserts the following grounds for relief:

(1) The BOP failed to consider the individual factors affecting his request and need for 12 months RRC as required by the Second Chance Act.

(2) BOP staff abused its discretion and acted with a lack of good faith by limiting his maximum RRC placement to six months.

(3) His RRC recommendation should be increased to a maximum of 12 months because the recommendation of 150-180 days is based on procedural error.

*Id.* at 3-4.

As to ground one, the petitioner asserts that the BOP failed to consider his individual factors when assessing his RRC placement. *Id.* at 3. As to ground two, the petitioner asserts that it was clearly the intent of Congress that every inmate be considered for 12 months RRC placement. *Id.* Therefore, he asserts that the BOP's presumptive six month cap on RRC placement is arbitrary and capricious and an abuse of discretion. *Id.* at 4, 5. Moreover, the petitioner asserts that granting an inmate a full 12 months RRC placement creates an inherent financial conflict of interest. *Id.* at 4. As to ground three, the petitioner asserts that his RRC placement determination was flawed because the BOP relied on a program statement rather than the regulations published in the Federal Register. *Id.* He also contends that certain members of his unit team did not participate in the decision making process. *Id.*

In the relief portion of his petition, the petitioner raises an additional ground for relief, to wit:

(4) The BOP's decision was not supported by substantial evidence.

*Id.* at 5. As to this ground, the petitioner asserts that the BOP has failed to offer any evidence which

3

supports its finding that six months RRC placement will provide him the greatest likelihood of successful integration. *Id.* The petitioner further asserts that because of the aforementioned financial conflict of interest, this Court's review of these proceedings is *de novo*. *Id.*

**B.   The Respondent's Response and Motion**

In response to the petition, the respondent first argues that the petition should be dismissed because the BOP's determination regarding the duration of the petitioner's RRC placement is not subject to judicial review. (Doc. 10 at 5). Second, the respondent contends that the BOP did not abuse its discretion with regard to its RRC review and referral of the petitioner's case pursuant to the Second Chance Act. *Id.* at 6-11. Third, the respondent argues that the matter should be dismissed because the BOP conducted an appropriate review of the petitioner's case and made an appropriate RRC referral recommendation. *Id.* at 7-9. Finally, the respondent argues that the petition should be dismissed as moot since the petitioner has received the only relief he is entitled to - consideration of his halfway placement in accordance with the factors delineated in 18 U.S.C. § 3621(b). *Id.* at 11-13.

**C.   The Petitioner's Response**

In his response to the respondent's motion, the petitioner asserts that the respondent is incorrect when he argues that there are no genuine issues of material fact. (Doc. 19 at 1). In addition, he argues that the government's argument is incorrect and misleading in its recitation and omission of key facts. *Id.* at 2. Specifically, he asserts that his sentence is not relatively short, noting that he was sentenced for 72 months, not 27 months, as the respondent contends. *Id.* Moreover, he asserts that the BOP failed to respond to all of the arguments raised in his petition. *Id.* Next, the petitioner asserts that the knowledge of a case manager is not more professional that the court's, that

some of the information utilized to assess his placement determination is false and that he meets all five factors which would entitle him to 12 months RRC placement. *Id.* at 3.-4. Finally, the petitioner again alleges a financial conflict of interest and that the Court's review in this case is *de novo*. *Id.* at 5.-6.

D. <u>**The Respondent's Reply**</u>

In their reply, the respondent notes that his original response did contain one factual error. (Doc. 28 at 1-2). The respondent concedes that the petitioner's sentence is 72 months and not 27 months. *Id.* at 1. However, the respondent asserts that such error was merely clerical and unintentional. *Id.* In addition, the respondent asserts that it complied fully with the provisions of the Second Chance Act in making the petitioner's RRC placement recommendation and that the petitioner's recommendation fell within the appropriate discretion of BOP staff. *Id.* at 2-3. Lastly, the respondent notes that the petitioner's RRC recommendation does not hamper his ability to pursue employment opportunities and that an appropriate five factor review was conducted. *Id.* at 3-5.

E. <u>**The Petitioner's Surresponse**</u>

In his surresponse, the petitioner basically reiterates the claims raised in his prior filings. (Doc. 29). Specifically, he challenges the veracity of the BOP's allegations and contentions, alleges that the respondent fails to respond to all of his factual claims and argues that there is a financial conflict of interest which prevents the BOP from appropriately assessing his RRC placement. *Id.*

IV. <u>**The Second Chance Act**</u>

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12

5

months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18 U.S.C. 3621(b) are as follows:

>  (1) the resources of the facility contemplated;
> 
>  (2) the nature and circumstances of the offense;
> 
>  (3) the history and characteristics of the prisoner;
> 
>  (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
> 
>  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## V. Analysis

**A.   18 U.S.C. § 3625**

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length

6

of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerate in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

**B.  Merits of Petitioner's Claim**

It is well-established that an inmate has no constitutional right to be confined to a particular

institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. For the reasons discussed below, the undersigned has determined that no such violation has occurred.

The petitioner argues that memorandums issued by the BOP negate the provisions of the Second Chance Act, and effectively limit RRC placements to six months or less. In addition, the petitioner argues that statements made by Harley Lappin, the Director of the BOP, clearly establish that a financial conflict of interest prevents the BOP from meaningful review and placement of inmates in an RRC facility.

On April 14, 2008, the BOP issued a memorandum entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007," which instructed that RRC placement be based on individualized review of each inmate's case. (Doc. 1 at Ex. B). The April 14, 2008 memorandum notes that, under the Act, the- pre-release RRC placement time frame is increased to a maximum allowable 12 months. *Id.* It further states that:

> While the Act makes inmates eligible for a maximum of 12 months
> pre-release placements, Bureau experience reflects inmates'
> pre-release RRC needs can usually be accommodated by a placement of
> six months or less. Should staff determine an inmate's pre-release RRC
> placement may require greater than six months, the Warden must obtain
> the Regional Director's written concurrence before submitting the place-
> ment to the Community Corrections Manager.

*Id.*; see also Strong v. Schultz, 599 F.Supp2d, 556, 559 (D.NJ 2009). In addition, the BOP issued

another memorandum on September 3, 2008, which describes the terms of the Second Chance Act and states generally that [t]he BOP's goal is to place inmates in RRCs for the amount of time necessary to provide the greatest likelihood of successful re-entry into the community." Bernard v. Roal, 2010 WL 2308198 (S.D.N.Y). This second memorandum concludes:

> Because the Second Chance Act prescribes the maximum amount of time for which inmates are eligible for pre-release RRC placement, as 12 months, BOP staff are reviewing each inmate for pre-release RRC placement 17-19 months before the inmates projected release date. Notwithstanding the statutory cap of 12 months, it is the BOP's experience that inmate's re-entry needs can usually be met with 6 months or less in an RRC. **An RRC placement beyond 6 months will only be approved upon a showing of an inmate's extraordinary and compelling re-entry needs**. The BOP will continue to balance each inmate's individual needs with the agency's duty to use its limited resources judiciously and to provide re-entry services as to many inmates as possible.

*Id.*

Finally, on October 21, 2009, the BOP issued a regulation which provides as follows:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, with the time-frames set forth in this part.

28 C.F.R. § 570.22.

In the two years since the Second Chance Act was passed, courts have frequently examined the BOP policy statements implementing the Act. In particular, much of the recent litigation in this field has focused on whether policy guidance that (1) notes that many inmates can be successfully integrated into society in 180 days or less; and (2) requires regional director approval for placements in excess of six months violate the Act by creating unwarranted institutional and bureaucratic

9

obstacles to 12-month placements.

"The majority view, reflected in numerous trial court opinions, and in the only appellate court decision to have considered this issue, holds that the Bureau of Prisons' requirement of regional director approval, and the agency's stated view that many inmates can have their needs meet [sic] through 180-day RRC placements, do not violate the Act." Ramos v. Holt, 2010 WL 2471707 (M.D.Pa.) (collecting cases). In reaching this conclusion, the opinions have reasoned that these policies reflect the broad discretion given the BOP to implement the Act. Therefore, these cases find nothing fundamentally objectionable about the policies "provided that each inmate receives the individualized consideration of this RRC placement called for by the Act." Id.

The undersigned recognizes that two cases have reached an opposite conclusion. See Kreuger v. Martinez, 665 F.Supp.2d 477, 482-83 (M.D.Pa. 2009); Strong v. Schultz, 599 F.Supp.2d at 563. Kreuger concluded that "the BOP has functionally placed a lid on the discretion that it wants staff to exercise," and that "the institutional preference for a RRC placement of six months or less...is contrary to the apparent purpose of the Second Chance Act. 665 F.Supp.2d at 483. Strong reached a similar conclusion and also found that the requirement that written correspondence be obtained of the Regional Director "impermissibly constrains staff's discretion." 599 F.Supp.2d at 563.

However, the Second Chance Act does not vest discretion in "staff" but instead in the Director of the BOP. Therefore, it is consistent with the Act for the BOP to require the involvement of a specific individual subordinate to the director in exercising that discretion. Bernard, *supra*. Furthermore, the memoranda's requirement for "extraordinary" showing for placements longer than six months has been upheld as consistent with the exercise of administrative discretion because it constitutes "a standard for deciding whether to grant a request for extended placement in an RRC."

10

*Id.* (collecting cases). Finally, the limitation on access to the RRC "is rationally related to one of the statutory factors which govern prison placements; namely, the allocation of limited available prison resources." McDonald v. Obama, 2010 WL 1526443 (M.D. Pa. Mar. 15, 2010) at *8 (citing 18 U.S.C. § 3621(b)). Accordingly, the undersigned has concluded that to the extent the petitioner rests his argument on BOP's memoranda, the same fails to state a basis for a grant of habeas corpus.

The undersigned has also considered the petitioner's allegation that the "heart of the matter [is a] financial conflict of interest." In support of this argument, the petitioner cites to the testimony of Harley Lappin before the United States Sentencing Commission regional hearing in Austin, Texas on November 20, 2009. In his statement, Mr. Lappin noted the following:

> The Second Chance Act expands the Bureau's authority to place inmates into RRCs by extending the time limit from the 10% (not to exceed six months) to 12 months and authorizing the agency to place inmates with short sentences (12 months or less) directly into RRCs for service of their entire term of imprisonment. Based on the mission of the agency – to confine offenders in institutions that are secure and cost efficient and provide opportunities to prepare for reentry – the Bureau of Prisons rarely uses RRCs for direct court commitments and rarely transfers inmates to RRC for prerelease services for more than 7 months. Most inmates with short sentences are appropriately placed in federal prison camps, which are minimum security, much less costly than RRCs and offer a wide variety of inmate programs; and most releasing offenders receive the necessary transitional assistance in three to four months at an RRC. While it is certainly desirable for offenders to remain with their families in the community for extended periods of time, such placements cannot be justified within the agency mission as cost efficient and necessary to address reentry needs.[1]

Although not specifically articulated, it would appear that the petitioner is arguing that this

---

[1] The petitioner cited only a portion of this text and provided no source for the text. However, several inmates have recently filed 2241 petitions challenging their RRC placements and have advanced similar arguments to those of the instant petitioner. Exhibit B in case 2:10cv59 is a transcript of Mr. Lappin's entire statement from November 20, 2009.

statement is evidence of unconstitutional conduct or evidence that the BOP has acted outside the scope of its authority, thus authorizing this Court to review the substantive decision on his RRC placement. The petitioner cites no case law to support his argument regarding a financial conflict of interest, and the respondent did not address the argument in his response. However, Mr. Lappin's statement clearly does not reflect the financial conflict of interest that has prompted courts to review agency decisions. As Director of the BOP, Mr. Lappin has a legitimate right to be concerned with budgetary constraints. However, the decision to place an inmate in an RRC for less than the maximum of twelve months provides no financial benefit to the staff members making the referral. Accordingly, the petitioner can show no personal interest, financial or otherwise, that would raise constitutional concerns with his RRC placement.

Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors. In recommending that 150-180 would be a sufficient amount of time for the petitioner to take full advantage of the transitional services and programs in the RRC to facilitate his transition back into the community, staff specifically noted that: (1) there are available community corrections is his release area; (2) the nature and circumstances of the petitioner's offense are eligible for RRC placement; (3) the history and characteristics of the petitioner are: he has an established residence and community ties. He attended various colleges and has a Doctorate degree. Upon release, he intends to secure a teaching position; (4) the sentencing court did not make any statement in the judgment and commitment order regarding community corrections placement; and (5) there is no pertinent policy by the sentencing commission. Resp't Ex. 1 at Att. E. (Petitioner's RRC Referral Form). Moreover, the Referral Form for RRC Placement must be read in conjunction with the petitioner's Progress Reports and other documents relating to

the petitioner which were sent to the Community Corrections Office for consideration in making its recommendation to a particular RRC for placement. *Id.* at Att. B; Resp't Ex. 4 at ¶ 5-6 (Declaration of Faith M. Waters). Taking all of ths information into account, the petitioner's Unit Team determined that five to six months of transitional RRC placement time would be of sufficient duration for reintegration into his community. Resp't Ex. 1 at Att. E.

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending that he be placed in an RRC for a period of 150-180 days. The fact that the petitioner's circumstances under that review could warrant two different interpretations of his need for RRC placement does not establish that the BOP was either derelict in its duties or wrong. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

## VI. <u>Recommendation</u>

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Doc. 9) be **GRANTED,** and the petitioner's § 2241 petition (Doc. 1) be **DENIED** and **DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.

28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to counsel of record via electronic means.

DATED: July 27, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE